PREET BHARARA
United States Attorney for the
Southern District of New York
By: CHRISTOPHER CONNOLLY
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel. No.: (212) 637-2761
Fax No.: (212) 637-2786
Email: christopher.connolly@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NAZEER M. BEY/KEVIN ERIC SCOTT,  Plaintiff,  v.  CITY OF WHITE PLAINS, et al.,  Defendants. | No. 10 Civ. 1887 (KBF) |

**FEDERAL DEFENDANTS' LOCAL CIVIL RULE 56.1**
**STATEMENT OF MATERIAL FACTS**

Defendants United States Immigration and Customs Enforcement officers Guillermo Diaz, Michael Sayed, and Edgar Rances (the "ICE Officers"), and the United States of America (the "United States") (collectively, the "Federal Defendants"), by their attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submit this statement of material facts as to which no genuine issue remains to be tried, pursuant to Local Civil Rule 56.1, and state as follows:

1. Scott is a native and citizen of Jamaica. *See* Declaration of Christopher Connolly dated July 13, 2012 ("Connolly Decl."), Exhibit ("Ex.") A (excerpts from transcript of deposition of Kevin Eric Scott held on May 10, 2012 ("Scott Tr.")) at 9:8-21.

2. On or about August 24, 2005, an Immigration Judge entered an order of removal against Scott. *See id.* at 9:22-10:10.

3. Scott never appealed the removal order to the Board of Immigration Appeals. *See id.* at 72:15-73:23; Fourth Amended Complaint (Dkt. No. 50) ("Fourth Am. Compl.") ¶ 25.

4. Beginning in about August 2009, Scott was detained at the Varick Detention Facility in Manhattan ("Varick") on the basis of the 2005 removal order. *See* Connolly Decl., Ex. A (Scott Tr.) at 12:20-13:16.

5. On September 21, 2009, Scott was transferred by bus from Varick to Harrisburg, Pennsylvania, where he was placed on a flight to Louisiana. *See id.* at 13:17-14:11.

6. Scott was then detained at the LaSalle Correctional Facility in Oakdale, Louisiana until September 24, 2009, when he was removed to Jamaica. *See id.* at 14:12-18.

7. Scott refused to cooperate with ICE personnel during his transfer from Varick on September 21, 2009, because he believed that his removal order was "not a legally binding document." *See id.* at 20:6-21:15.

8. When an ICE officer approached Scott in a holding cell and asked him to sign a Form I-205 Warrant of Removal, Scott refused. *See id.* at 15:19-17:4; *see also id.*, Ex. B (excerpts from transcript of deposition of Michael Sayed held on May 14, 2012 ("Sayed Tr.")), Plaintiff's Ex. C (Form I-205 for Kevin Eric Scott).

9. Later, Scott and another detainee sat on the floor and refused to move. *See id.*, Ex. A (Scott Tr.) at 20:7-19.

10. Scott's objective was that he "would just be dead weight. I would just be limp." *Id.* at 21:9.

11. Scott was handcuffed and shackled, and employees of Ahtna Technical Services, Inc. ("ATSI"), an outside contractor that performed security services at Varick, were obliged to place Scott in a wheelchair in order to transport him from the holding cell to the "sally port," *i.e.*, the area in Varick where detainees would board the bus for transport to Harrisburg. *See id.* at 20:6-19.

12. Because Scott and the other inmate were not cooperating, an ATSI lieutenant directed an ATSI employee, Devin Newman, to record their transfer with a handheld video camera. *See id.*, Ex. C (excerpts from transcript of Devin Newman held on Apr. 24, 2012 ("Newman Tr.")) at 46:3-47:13.

13. Scott refused to comply with requests to voluntarily provide his fingerprint on the Form I-205. *Id*, Ex. A (Scott Tr.) at 25:8-26:5.

14. Because Scott knew that ICE personnel were required to obtain a print of the detainees' right index fingers, he made his right hand into a fist in an attempt to prevent ICE personnel from obtaining the fingerprint. *See id.* at 29:19-25.

15. Because Scott would not voluntarily provide his fingerprint, an unidentified ICE officer "grabbed [Scott] from the back of the neck. He inserted his thumb in the small space or pressure point behind [Scott's] right ear with the rest of his hand around the back of [Scott's] neck." *Id*. at 31:11-14.

16. The pressure point "caused [Scott] to release [his] hand," *i.e.*, to open the fist he had made in order to prevent his fingerprint from being taken. *See id.* at 31:15-24.

17.     Neither Diaz, nor Sayed, nor Rances applied the pressure point to Scott. *See id.* at 39:5-15.

18.     Scott's Form I-205 with a fingerprint was signed by Sayed, meaning that Sayed was the officer who ultimately obtained Scott's fingerprint. *See id.*, Ex. B (Sayed Tr.) at 9:21-11:10 & Plaintiff's Ex. C (Form I-205).

19.     The Interim ICE Use of Force Policy, which was in force on September 21, 2009, and which governs the conduct of personnel such as the ICE Officers, sets forth a "use of force continuum" that "illustrate[s] the levels of force an officer may need to use to gain control over a subject." Declaration of William T. Bonk dated July 13, 2012 ("Bonk Decl."), Ex. A (Interim ICE Use of Force Policy dated July 7, 2004 ("Use of Force Policy")) at 1-3; Bonk Decl. ¶ 3.

20.     The use of force continuum lists "[t]ouch pressure points" as a "soft technique" that ICE personnel may employ. *Id.*, Ex. A (Use of Force Policy) at 2.

21.     After he was fingerprinted, Scott was carried by Newman onto the bus to Harrisburg. *See* Connolly Decl., Ex. A (Scott Tr.) at 36:9-19.

22.     As a result of the pressure point, Scott "had a migraine for a little while." *See id.* at 39:19-23.

23.     Scott also experienced pain in his wrist, fingers, and neck, but the pain in these areas had subsided by the time he reached Harrisburg and was placed on the flight to Louisiana. *See id.* at 40:7-14.

24.     Scott was given "an Aspirin or Tylenol" for his headache during the flight to Louisiana, and it helped ease his headache. *See id.* at 43:16-44:23.

25.     Scott did not have a headache by the time the flight reached Louisiana. *See id.* at 45:3-14.

26. During his detention at Oakdale, Scott neither asked for nor received any medical treatment. *See id.* at 45:15-46:16.

27. According to Scott, while he was detained in Louisiana and later when he was in Jamaica, he experienced "disorientation and dizziness" that he now attributes to the fingerprinting incident, although he did not make that connection at the time, and did not seek any medical attention in Jamaica. *See id.* at 46:7-47:2, 49:11-50:2.

Dated: New York, New York
       July 13, 2012

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York
                              *Attorney for the Federal Defendants*

By:    s/ Christopher Connolly
                              CHRISTOPHER CONNOLLY
                              Assistant United States Attorney
                              86 Chambers Street
                              New York, New York 10007
                              Tel.: (212) 637-2761
                              Fax: (212) 637-2786
                              E-mail: christopher.connolly@usdoj.gov